UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

CORDOZA NORRIS,

                                    Petitioner,

           v.                                                              9:22-CV-0140
                                                                           (GTS)
SUPERINTENDENT,

                                    Respondent.

_____

APPEARANCES:                                                   OF COUNSEL:

CORDOZA NORRIS
Petitioner Pro Se
95-A-1396
Hudson Correctional Facility
P.O. Box 576
Hudson, New York 12534

HON. LETITIA JAMES                                       HANNAH S. LONG, ESQ.
Attorney for Respondent                                  Ass't Attorney General
New York State Attorney General
The Capitol
Albany, New York 12224

GLENN T. SUDDABY
United States District Judge

### DECISION and ORDER

## I.      INTRODUCTION

Petitioner Cordoza Norris seeks federal habeas relief pursuant to 28 U.S.C. § 2254.

Dkt. No. 1, Petition ("Pet."); Dkt No. 1-1, Exhibits.[1]  Respondent was directed to answer the

petition.  Dkt. No. 2, Decision and Order ("February Order").

---

[1]  For the sake of clarity, with one limited exception, citations to all parties' filings refer to the pagination generated by CM/ECF, the Court's electronic filing system.  However, citations to the State Court Record, Dkt. No. 20-1, reference the Bates-stamp at the bottom-center of each page as that exhibit is separately and consecutively paginated.

Respondent successfully moved to limit the answer to the question of timeliness and, in the alternative, exhaustion.  Dkt. No. 18, Motion; Dkt. No. 19, Text Order (granting motion). Petitioner filed a reply to the limited answer.  Dkt. No. 20; Limited Answer; Dkt. No. 20-1, State Court Record; Dkt. No. 20-2, Memorandum of Law in Opposition.  Petitioner filed a reply.  Dkt. No. 21, Traverse.

For the reasons which follow, the petition is denied and dismissed as untimely.

## II.    RELEVANT BACKGROUND

### A.    State Court Criminal Proceedings

Petitioner was convicted by a jury, in Kings County, of two counts of first-degree rape and one count of fourth-degree criminal possession of a weapon after he brandished a weapon and brutally raped an 8-year-old girl, causing her severe physical harm.  SCR at 8, 12-13, 22-23; *see also People v. Norris*, 108 A.D.2d 760, 760 (2d Dep't 1985) ("*Norris I*"). Petitioner was sentenced to an indeterminate sentence of 7 to 21 years' incarceration.  SCR at 23, 25.  Petitioner directly appealed his conviction, which was affirmed by the New York State Appellate Division, Second Department, on February 4, 1985.  *Norris I*, 108 A.D.2d at 762.

### B.    Subsequent Parole Violations

Petitioner was subsequently released to parole on or about January 7, 1993.  SCR at 255.  However, shortly thereafter, petitioner violated his parole by committing burglary and several sex crimes by "sexually assault[ing two] different 9 year old girls and threaten[ing] to cause serious harm or kill them."  SR 172; *see also* SR 30-34 (1995 sentencing transcript for burglary plea sentencing petitioner to an indeterminate term of 6 to 12 years) SR 42-44 (2005 sentencing transcript outlining concurrent sentences for underlying criminal conviction and

2

two parole violations); *People v. Norris*, 168 A.D.3d 1003, 1003-1004 (2d Dep't 2019) ("*Norris II*") (explaining that "[i]n January 2005, [petitioner] pleaded guilty to various crimes based on his rape of a nine-year-old girl at knifepoint [and] . . . was sentenced to an indeterminate term of imprisonment of 7 ½ to 15 years.").

In sum, petitioner was serving an aggregate indeterminate sentence composed of indeterminate sentenced from all three judgments.  SR 44.  Further, petitioner expected to be eligible for release to parole on July 17, 2012, to be conditionally released due to good time credits on December 24, 2015, and to fully complete his sentence – as signified by his maximum expiration date – on October 6, 2026.  Dkt. No. 1-1 at 20 (Reception/Classification time computation data from March of 2019).

### C.   Sex Offender Treatment, Good Time Credits, and Article 10 Civil Management Proceedings

In 2012, when petitioner first became eligible for parole, the Parole Board denied his application because of petitioner's lengthy criminal history, characterized by victimizing children, and his poor institutional behavior.[2]  SR 144.  Further, petitioner failed to complete the sex offender program, so he was instructed to be compliant with said programming to "facilitate [his] rehabilitation and provide insight into [his] deviant behavior."  *Id.*

By July of 2015, petitioner's willingness to successfully participate in, and complete, his required programming had significantly improved, as had his disciplinary record, so much so all his good time credits were returned to him.  SR 188.  Petitioner was warned that he "[m]ust continue positive participation in all programs as well as [a] clean disciplinary [record] and complet[ion of sex offender programming] to maintain [his conditional release] date."  *Id.*

---

[2]  Since the inception of petitioner's custody, he had amassed approximately a dozen disciplinary infractions in various correction facilities for, generally, violations involving violence, harassment, lewd conduct, and stalking.  SR 252-54.

3

In October of 2015, petitioner received notification that he was being referred for further proceedings, pursuant to Article 10 of the Mental Hygiene Law, to determine whether he was an appropriate candidate for (1) discharge, (2) release with strict intensive treatment and supervision, or (3) civil confinement.[3]  SR 56, 61-62, 64.  On or about December 11, 2015, petitioner was deemed in need of civil management.  SR 56.  On December 22, 2015, days prior to petitioner's conditional release date, a motion was made in county court for Civil Management.  SR 58-64.  As part of that motion, it was requested that petitioner be retained "past his scheduled release date . . . until the probable cause hearing ha[d] been held and a determination rendered[.]"  SR 57.

The following day, December 23, 2015, and again two weeks later, on January 6, 2016, petitioner and his counsel signed consent forms to "remain in the custody of . . . [the Department of Corrections and Community Supervision (]DOCCS[)] . . . pending the outcome of the [civil management] proceeding under . . . Article [10]."  SR 189, 190.  The consent indicated that petitioner understood and agreed to continue to follow DOCCS rules and protocols while in its continued custody.  *Id.*  The paperwork also explained that the consent was revokable, in writing, at any time; however, "such a transfer of custody may be anticipated to occur approximately two weeks following receipt by [DOCCS] . . . of [the]

---

[3]  Article 10 of the Mental Hygiene Law allows for the Attorney General to bring a motion seeking ongoing supervision of a "recidivistic sex offener[]" or individuals with "mental abnormalities that predispose them to engage in repeated sex offenses . . . to provide them treatment and to protect the public from their recidivistic conduct."  SR 53 (citing N.Y. MENTAL HYG. LAW ("MHL") § 10.01(b)).  After a "multidisciplinary professional panel" and "a case review team" identify an individual with a "predispos[ition] . . . to the commission of conduct constituting a sex offense," a court will "conduct a hearing to determine whether there is probable cause to believe that the [individual] is a sex offender requiring civil management."  SR 53-54 (citing MHL §§10.03 &10.06).  Thereafter, a trial is conducted to determine whether clear and convincing evidence establishes that the individual "is a detained sex offender who suffers from a mental abornality[.]"  SR 55 (citing MHL § 10.07).  If that is the case, then the court must ultimately "conduct a hearing to determine whether the [individual] . . . require[s] confinement," in one of the Office of Mental Health's secure treatment facilities or whether the individual will be "released to a regimen of strict and intensive supervision and treatment."  *Id.*  Either way, the decision is subject to periodic review.  *Id.* (citing MHL § 10.09 & 10.11).

written revocation of consent."  SR 191.

On May 2, 2016, the Kings County Supreme Court found probable cause to conclude that petitioner needed to "be transferred and committed to a secure treatment facility . . . for care, treatment and control," because petitioner "pose[d] a danger to the community in reoffending as a sex offender . . . and that no other form of confinement would be sufficient to protect the public from [petitioner]."  SR 68-69.  Petitioner was to remain detained pending trial.  SR 69.  Because petitioner waived transfer to a facility operated by the Office of Mental Hygiene, petitioner remained in DOCCS custody.  SR 189-91.

### D.    Petitioner's Disciplinary Dispositions, Loss of Good Time & Motion to Dismiss the Civil Management Proceedings Without Prejudice

After May of 2016, while awaiting trial under Article 10, petitioner engaged in several violations of DOCCS' rules of behavior.  SR 250-51.

Specifically, in February of 2017, petitioner was found guilty of violent conduct.  SR 250.  Then, in February of 2018, petitioner was charged with interference with an employee, harassment, lewd conduct, and stalking for "continuously rubb[ing his] private area with [his] right hand on top of [his] pants in the . . . Rec area while looking at [a particular corrections officer.]"  SR 195.  Petitioner was referred to Aggression Replacement Treatment Program (ART) and the Sex Offender Counseling and Treatment Program (SOCTP), each of which petitioner had previously completed on one or more occasions.  SR 193; *see also* SR 236 (showing an "inappropriate placement" for the SOCTP program in 2014 and March of 2015, followed by a successful completion in December of 20215); SR 238-40, 245-46 (showing successful completion of ART in 1999, 2001, 2008, 2009 & 2012).  While one of the charges, interference with an employee, was ultimately dismissed, the disposition and penalty were both affirmed.  SR 201.

Concurrently throughout this same period, petitioner was periodically being reviewed by the parole board.  While the hearings were postponed several times due to petitioner's court dates and administrative appeals, all the decisions ultimately denied him parole.  SR 162-63 (denying parole in March of 2018 while at Woodbourne Correctional Facility); SR 163 (postponing hearing one month due to petitioner's refusal); SR 164-167 (posting hearings for six months a piece due to petitioner's court appearances); SR 168-170 (denying parole in April of 2019 while at Bare Hill).

In May of 2019, a third superintendent's hearing found petitioner guilty of stalking and being out of place when he entered a bathroom stall knowing that a staff member was using it.  SR 202-212.  On June 5, 2019, while the administrative appeal process was ongoing, petitioner revoked his consent to stay in DOCCS custody during his Article 10 proceeding and instead requested transfer to a facility run by the Office of Mental Health.  SR 215.

A little less than two weeks later, the Time Allowance Committee (TAC) determined that petitioner must reenroll in ART and SOCTP.[4]  While petitioner had previously completed this programming, reenrollment was required because of his regression, a formal hearing was mandated, and a loss of good time credit recommended due to his excessive disciplinary history.  *Id.*  Petitioner acknowledged receipt of the notice which scheduled the hearing for "a detailed evaluation of [petitioner's] overall institutional adjustment and program participation to determine good time allowances."  SR 217.

On June 24, 2019, the Chairman of the TAC presided over the aforementioned hearing reconsidering petitioner's time allowance and determined that all his good time credits should be withheld.  SR 220.  Specifically, the Chairman noted that the "TAC feels the

---

[4] While not determinative, it is worth noting that SOCTP was not available to petitioner in the Summer of 2019 because he was currently confined in the Special Housing Unit (SHU) as the result of his disciplinary sanction.  SR 216.

recent disciplinary which resulted in a regression in ART [and] SO[CT]P warrants withholding all good time." *Id.*[5]  Moreover, the Chairman noted that petitioner was able to "request reconsideration [of the decision] upon completion of both programs." *Id.*  On July 1, 2019, while petitioner was still in DOCCS custody, the Commissioner accepted the TAC's recommendation.  SR 221.

Ten days later, on July 11, 2019, petitioner's 2019 disciplinary disposition for the bathroom incident was reversed and expunged for the facility's "failure to maintain complete electronic record[s]."  SR 222-23.

On July 17, 2019, petitioner appeared, with counsel, for the Article 10 proceeding in Kings County Court.  SR 70-76.  During the opening remarks, the assistant attorney general informed the court about the 2019 disciplinary disposition's recent reversal and explained that both parties believed that, as a result of that reversal, the petitioner would not be losing any good time credits, thus, they could move forward with the Article 10 proceeding.  SR 71.  However, both parties were informed that their assumption was incorrect because, in DOCCS' opinion, "there was another stalking ticket from 2018, and it seems . . . even more paramount . . . that [petitioner ha]s not engaged or completed any of the programs that he's required to participate in."  SR 71.  Consequently, petitioner was projected to lose good time through July of 2021.  SR 72.

Because an Article 10 proceeding is intended to be brought at or near the time of an individual's release from custody and given the fact that petitioner's good time credit would not be returned until 2021, the assistant attorney general indicated that either (1) the matter

---

[5]  It is important to note that the TAC did not specify whether the "disciplinary" to which it was referring was petitioner's 2018 stalking disposition, which was affirmed; his 2019 stalking disposition, which was ultimately reversed; or his disciplinary history more globally.

be stayed for two years or (2) petitioner's counsel move to dismiss the case.  SR 72-73.  The government argued that the case should be dismissed without prejudice with the ability to refile it again in 2021, whereas petitioner's counsel argued the motion should be made with prejudice so that it could never be brought against the petitioner again.  SR 72-74.

Ultimately, petitioner's counsel made a timely motion to dismiss, without prejudice, due to the court's lack of subject matter jurisdiction.  SR 77-81.[6]  On July 30, 2019, petitioner's motion was granted and the Article 10 petition was dismissed, as premature, with the right to refile as petitioner nears his anticipated release date.  SR 82.

On August 6, 2019, the Kings' County Court sent petitioner a response to a letter he authored, on July 29, 2019, which apparently requested a status update on the procedural posture of the Article 10 proceeding.  Dkt. No. 1-1 at 15.  The letter stated that the "Article 10 proceeding . . . is no longer pending before th[e] court [as] . . . it was dismissed without prejudice [on] . . . July 30, 2019."  *Id.*

On August 28, 2019, petitioner received a response to concerns he had expressed to DOCCS administration regarding his continued custody.  Dkt. No. 1-1 at 8.  In that correspondence, it was explained that petitioner was

> scheduled to Conditional Release on 12/24/15.  Based on [his] Mental Hygiene Law Article 10 proceeding, [petitioner] was held beyond [his] Conditional Release date.  This was not done maliciously . . . there was no malfeasance or improper practice or procedure involved.  This was conducted within the [guide]lines of the Mental Hygiene Law.  Therefore, in the interim of [petitioner's] . . . Article 10 [act]ion, [petitioner] continued to be incarcerated in a NYSDOCCS facility with the expectation that [petitioner would] continue[ to fol]low all Standards of Inmate Behavior.  [Petitioner] failed to follow the rules [and] . . . regressed in ART & SOCTP,

---

[6]  Petitioner's counsel's change of heart was due presumably to (1) petitioner's acknowledgement that there was a 2018 ticket for stalking and (2) the TAC's 2019 decision, subsequently affirmed by the DOCCS Commissioner, which did not rely on any specific disciplinary disposition for its ultimate conclusion that petitioner's good time credit should all be withheld, and his release date postponed, until he repeats the ART and SOTCP programming.  SR 71-72, 74, 220-21.

[and as of] this date, [petitioner] ha[s] failed to complete SOCTP.

Dkt. No. 1-1 at 8.  Petitioner was reminded that he was able to seek reconsideration of his good time credit calculation upon completion of SOCTP and was further encouraged to "stay out of trouble and continue tak[ing] advantage of all programming [opport]unities."  *Id.*

In December of 2019, petitioner was provided with the opportunity to participate in SOCTP; however, he refused.  SR 224.  Petitioner again refused a month later, in January of 2020, as well as in April of 2021 and August of 2021.  SR 225-27.

Petitioner was also concurrently being evaluated for, and ultimately denied, parole in 2020 and 2022 respectively.  SR 171-79 (denying parole in March of 2020 while at Franklin Correctional Facility); SR 182-83 (denying parole in April of 2020 while at Gouverneur Correctional Facility).  Petitioner's maximum expiration date is November 2, 2026.  SR 258.

### E.    State Court Challenges

Petitioner filed a pro se habeas petition, in Frankiln County, pursuant to Civil Practice Law and Rules (C.P.L.R.) Article 70.  SR 86-108.[7]  Petitioner argued that he was entitled to relief because he was unlawfully "imprisoned and restrained of his liberty" because the TAC lost its reason for stripping petitioner of all his good time credits when the 2019 disciplinary disposition was reversed on administrative appeal.  SR 87.  Furthermore, petitioner argued that there was a legal hold pending during his Article 10 proceedings; however, "[t]he dismissal of the Article 10 on July 30th, 2019 automatically reinstated [petitioner's December] . . . 2015 conditional release date . . . [and n]o legal hold existed [or continues to exist]."  SR 88.

The government opposed the petition.  SR 109-128.  Specifically, counsel moved to

---

[7]  On the signature page, the petition was dated August 28, 2020.  SR 90.  However, it was sworn to on June 17, 2020, and received in the Franklin County Clerk's Office on September 8, 2020.  SR 83.

dismiss the action because the removal of good time credit by the TAC cannot be challenged in an Article 70 proceeding since habeas relief is not available in those circumstances.  SR 115.  Moreover, the government alternatively argued that even if the action was to be converted to an Article 78 proceeding – whereupon relief was arguably available – dismissal was still proper because the action was untimely filed.  SR 116.

On January 15, 2021, the Franklin County Court denied the Article 70 petition.  SR 129-134.  Specifically, the court concluded that, because habeas is an inappropriate remedy for TAC determinations, petitioner was not entitled to relief.  SR 132-33.  Moreover, while considering whether converting the petition was appropriate, the court noted that any "challenge to the TAC determination would be untimely," but it was not convinced that petitioner's claims should be so narrowly construed.  SR 133.  Instead, the court "viewed Petitioner's claim more in the nature of the TAC's failure to act on his request for reconsideration;" however, the court still concluded that "the record [wa]s devoid of sufficient details as to how and when such request was made."  SR 133.  Thus, the petition was denied.

Petitioner did not appeal the Franklin County Court's decision.  Pet. at 12.

## III.    THE PETITION

Liberally construing the present pleading, petitioner argues that he has been illegally detained beyond his conditional release date, specifically challenging the decision, from the TAC and the DOCCS Commissioner, to remove all of petitioner's good time credits.  Pet. at 15-16.

Respondent opposes the petition, arguing that the case should be dismissed because the action is both untimely and unexhausted.  *See* Dkt. No. 20-2.

Petitioner acknowledges that the action is untimely.  Pet. at 12, 15-16, 19.  However, petitioner contends that because he was prevented from challenging his custody equitable tolling should apply.  Pet. at 12 ("because of all the dirty tactics used by DOCCS to keep me out of the courts, [I was taken] . . . past the statute of limitations.").

For the reasons which follow, the undersigned finds that the action is untimely and that tolling does not save it; therefore, further discussion regarding respondent's exhaustion arguments is not necessary.

## IV.   DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted on April 24, 1996, established a one-year statute of limitations for prisoners to seek federal review of their state court criminal convictions.  28 U.S.C. § 2244(d)(1).  The one-year period generally begins to run from the date on which the state criminal conviction became final by the conclusion of direct review or by the expiration of the time to seek direct review.  28 U.S.C. § 2244(d)(1)(A); *Gonzalez v. Thaler*, 565 U.S. 134, 149-50 & n.9 (2012).  However, other dates from which the limitations period may start running are (1) the date on which an unconstitutional, state-created impediment to filing a habeas petition is removed; (2) the date on which the constitutional right on which the petitioner bases his habeas application was initially recognized by the Supreme Court, if the right was newly recognized and made retroactively applicable; or (3) the date on which the factual predicate for the claim or claims presented could have been discovered through the exercise of due diligence (newly discovered evidence).  *See* 28 U.S.C. § 2244(d)(1)(B)-(D).

Here, the statutory limitations period commenced on one of the alternate accrual dates, when petitioner learned of the factual predicate for the claims he is currently

11

presenting.  Petitioner argues that after his 2019 disciplinary disposition was reversed, on July 11, 2019, and his Article 10 action was dismissed, on July 30, 2019, he should have been immediately released pursuant to his scheduled conditional release date, effective as of December 24, 2015, because he was no longer the subject of a legal hold.  Petitioner was aware of all these facts, at the absolute latest, at some point between his receipt of the letter from the King's County Court, on August 6, 2019, and him writing a complaint about the TAC, which DOCCS staff responded to on August 28, 2019.  *See* Dkt. No. 1-1 at 8, 15.

Giving petitioner every conceivable benefit for the present limitations calculation, the Court will presume that the instant accrual date is the same day petitioner received DOCCS' response about the TAC inquiry, on August 28, 2019.  Accordingly, petitioner had one year, or until August 28, 2020, to timely file the instant action.[8]  28 U.S.C. §2244(d)(1).  The present pleading, which was executed and placed into the prison mailing system on January 28, 2022, was filed almost a year and a half after the termination of the limitations period.[9]

## A.    Statutory Tolling

The one-year limitation period under AEDPA is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2); *Saunders*, 587 F.3d at 548.  The tolling provision excludes from the limitations period only the time that the state relief application remained undecided, including the time during which an appeal from the denial of the motion was

---

[8]  According to Rule 6(a) of the Federal Rules of Civil Procedure, "[w]hen a statute of limitations is measured in years, the last day for instituting the action is the anniversary date of the state of the limitations period."  *Ross v. Artuz*, 150 F.3d 97, 103 (2d Cir. 1998).  "The anniversary date is the 'last day to file even when the intervening period includes the extra leap year day.'"  *Ryan v. Griffin*, No. 9:10-CV-0395 (MAD/ATB), 2011 WL 6934269, at *3 (N.D.N.Y. Dec. 30, 2011) (quoting *United States v. Hurst*, 322 F.3d 1256, 1260 (10th Cir. 2003).

[9]  Under the prison "mailbox rule," a petitioner's application is deemed filed on the date he delivers it to the prison authorities for mailing.  *Houston v. Lack*, 487 U.S. 266, 270 (1988)

taken.  *Saunders*, 587 F.3d at 548; *Smith v. McGinnis*, 208 F.3d 13, 16 (2d Cir. 2000) (per curium).  Further, the tolling provision does not reset the date from which the one-year statute of limitations began to run.  *Smith*, 208 F.3d at 17.

It appears that petitioner's Article 70 petition was filed on the same day that the statutory limitations period expired.  *See* SR 90 (dating document August 28, 2020).[10]  Accordingly, statutory tolling would apply to the time that the state habeas action was pending, through the county court's decision denying the petition on January 15, 2021.  SR 128.  Again, petitioner did not file the instant action until January 28, 2022, well over a year beyond the expiration of the limitations period after the application of statutory tolling.

Consequently, statutory tolling alone does not save petitioner's claims from being deemed untimely.

## B.    Equitable Tolling

The AEDPA's one-year statute of limitations period "is subject to equitable tolling in appropriate cases."  *Holland v. Florida*, 560 U.S. 631, 645 (2010).  To warrant equitable tolling, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Diaz v. Kelly*, 515 F.3d 149, 153 (2d Cir. 2008).

> To show that extraordinary circumstances 'prevented' him from filing his petition on time, [P]etitioner must 'demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the [P]etitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.

---

[10]   The prison mailbox rule also applies to state court collateral review for purposes of determining the commencement of federal statutory tolling under 28 U.S.C. § 2244(d)(2).

*Hizbullanhankhamon*, 255 F.3d at 75 (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)).

Petitioner advances several conclusory arguments that equitable tolling should save the instant action.  First, petitioner contends that there was malfeasance by DOCCS employees.  Specifically, petitioner indicates that his 2018 disciplinary ticket was the result of a set up and that "there was never any good time taken, and there was also never a referral to SOCTP until [December 30, 2019]."  Dkt. No. 21 at 3.  Petitioner contends that the Attorney General's Office, in conjunction with the staff at Bare Hill Correctional Facility, fabricated the Tier 3 report and conviction to have the Upstate Correctional Facility TAC take away his good time credits in anticipation of his upcoming parole.  *Id.* at 1-4.[11]

Second, petitioner contends that there was wrongdoing by respondent's counsel. Specifically, petitioner indicates that while the consent form to remain in DOCCS custody during his Article 10 hearing includes his signature, it was a fraud.  Dkt. No. 21 at 5.  Instead, petitioner opines that the "[t]he AG's office use[d] a copy machine to combine the [December 2015] consent . . . with the [signature on petitioner's June 2019] revocation."  *Id.*

Finally, petitioner contends that he never gave his attorney the authority to file a motion to dismiss his Article 10 proceeding without prejudice.  Dkt. No. 21 at 5.  Instead,

---

[11]  Petitioner was housed at several different facilities between 2015 and 2021 due to court appearances and facility transfers.  To the extent petitioner intimates that these transfers were at all extraordinary circumstances justifying equitable tolling, such arguments would be denied as meritless.  *Ghee v. McAuliffe*, No. 9:23-CV-0505 (MAD), 2024 WL 1558480, at *3 (N.D.N.Y. Apr. 10, 2024) ("Generally, the difficulties attendant on prison life, such as transfers between facilities, solitary confinement, lockdowns, restricted access to the law library, and an inability to secure court documents, do not, by themselves qualify as extraordinary circumstances.") (citing cases).  Further, any arguments that petitioner was a layman and unskilled in the law are similarly insufficient to change the Court's analysis.  "Most courts . . . recognize that lack of knowledge and education about the law and one's legal rights is not an extraordinary circumstance because tolling for this common obstacle that most petitioners face would undermine the legislative decision to impose a one-year limitations period."  *Adkins v. Warden*, 585 F. Supp. 2d 286, 297 (D. Conn. 2008), *aff'd*, 354 F. App'x 564 (2d Cir. 2009), *cert. denied*, 562 U.S. 953 (2010) (citing cases).  Finally, petitioner has failed to specifically articulate how these restrictions interfered or prevented his ability to timely file the instant action.

counsel "submitted th[e] motion on a day [petitioner] was not present in Court, even though [petitioner] . . . wanted to be present at all court dates and th[e justices] ordered it." *Id.* This, petitioner asserts, is evidence of the conspiracy between his counsel and the Attorney General's office. *Id.*

Assuming, without deciding, that petitioner's arguments regarding the alleged concerted actions of unnamed DOCCS employees at several correctional facilities, his appointed counsel, and unidentified members from the Attorney General's Office all constituted extraordinary circumstances, petitioner must still show that he "consistently and diligently pursued his rights throughout the entire period he seeks to toll" because "show[ing] reasonable diligence for [only] a discrete period of time," is insufficient. *Owens v. Keyser*, No. 1:18-CV-11638, 2020 WL 9596014, at *7 (S.D.N.Y. Sept. 25, 2020) (denying equitable tolling where petitioner failed to "proffer[] any facts to show that he exhibited any diligence [for the eighteen months' time from when] . . . he learned that his leave to appeal was denied until he filed his Petition, except for the brief time [for one month] when he enlisted the help of his housing officer [to acquire his legal file]."); *see also Taylor v. Brown*, No. 1:06-CV-7675, 2009 WL 400365, at *4 (S.D.N.Y. Oct. 2, 2008) (opining that equitable tolling would not be available for a petitioner who timely filed a habeas petition which then was stayed, but then failed to promptly request that the stay be lifted until 200 days after the limitations period had expired, and did not otherwise "proffer an explanation for the actions he took [during those 200 days] to pursue exhaustion of his state-court remedies or his federal habeas corpus petition."); *Gadson v. Greiner*, 1:00-CV-1179, 2000 WL 1692846, at *2 (E.D.N.Y. Sept. 27, 2000) (holding that a one-year period and seven and one-half month period constitute "prolonged periods of inactivity [that] cannot be viewed as anything other than a marked lack

of diligence.").

Here, petitioner has failed to establish reasonable diligence.  Petitioner was fully aware that, as of August 28, 2019, his Article 10 proceeding was dismissed, his 2019 disciplinary disposition was reversed, and he was allegedly supposed to be conditionally released.  When his release did not happen, petitioner failed to take any action to vindicate his rights for an entire year.  Based on that time period alone, equitable tolling has been denied.  *See Barrett v. United States*, 961 F. Supp. 2d 403, 409 (D. Conn. 2013) (finding petitioner's "inordinate delay in filing his petition – nearly seven months after his attorney explicitly informed him of his right to do so – precludes any finding or reasonable diligence.") (citing *Belot v. Burge*, 490 F.3d 201, 207-08 (2d Cir. 2007) (affirming district court's decision that petitioner was not entitled to equitable tolling because "the petitioner ought reasonably to have begun his preparation earlier and filed an unpolished-but-timely-petition rather than wait to file his more polished petition . . . the week that the deadline expired.") (internal quotation marks and alterations omitted).

Further, petitioner provides no specific information on what he was doing or how he was acting with reasonable diligence for the second one-year period between the conclusion of his state court litigation and the filing of the instant action.  The Second Circuit has held that "conclusory and vague claim[s]" of mental illness are insufficient to satisfy a petitioner's burden of establishing extraordinary circumstances sufficient to justify equitable tolling.  *See Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000) (holding a "conclusory and vague claim, without a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights, is manifestly insufficient to justify any further inquiry into tolling.").  Therefore, the undersigned similarly holds that

16

petitioner's conclusory and unsupported assertion that numerous, unidentified DOCCS employees from various facilities conspired to preclude petitioner from filing correspondence with the state or federal courts is unavailing.

Moreover, the record belies petitioner's assertions because it shows his ability to send mail consistently throughout 2019 and again in 2020.  Specifically, after his Article 10 dismissal, petitioner was able to correspond with the Kings County Court, Dkt. No. 1-1 at 15, as well as DOCCS employees, *id.* at 8, in August of 2019.  Furthermore, petitioner filed a complaint with the Attorney General, regarding his Article 10 proceeding, in November of 2019, SR 268-271, as well as his state court petition seeking habeas relief in August of 2020, SR 90.  Accordingly, documents provided by both parties refute petitioner's claims of a complete prohibition on his ability to (1) correspond with DOCCS administration or the courts or (2) challenge the decisions that were being made regarding his disciplinary dispositions and continued custody.

In sum, even where a petitioner establishes an "'extraordinary circumstance' warranting equitable tolling," they may be unable to show "that [the] extraordinary circumstance prevented him from filing a timely habeas petition."  *Hizbullahankhamon*, 255 F.3d at 76 (emphasis in original).  "[P]etitioner's failure to describe any step he took toward preparing his application during the relevant period means the link of causation between the extraordinary circumstances and the failure to file is broken, and equitable tolling is not warranted."  *Perez v. Johnson*, No. 1:21-CV-3061, 2023 WL 4405656, at *5 (E.D.N.Y. July 7, 2023) (internal quotation marks and citations omitted).

Consequently, petitioner has failed to establish the diligent pursuit of his claims; therefore, equitable tolling will not save the untimely petition.

### C.    Equitable Exception

Courts have also recognized an equitable exception to the one-year statute of limitations under 28 U.S.C. §2244(d)(1) in cases where a petitioner can prove actual innocence.  *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013).  It is important to stress that "[o]nce guilt is . . . established . . . a federal habeas court will not relitigate the question of guilt for a state defendant who protests his actual innocence . . . [r]ather, a federal habeas court will review state convictions for constitutional error."  *Hyman v. Brown*, 927 F.3d 639, 656 (2d Cir. 2019).

An actual innocence claim will be recognized only in a "narrow class of truly extraordinary cases [where a petitioner can] present[] credible and compelling claims of actual innocence."  *Hyman*, 927 F.3d at 656 (citing *Schlup*, 513 U.S. at 315) (internal quotation marks omitted); *see also House*, 547 U.S. at 538 (noting that the actual innocence gateway standard is "demanding and permits review only in the extraordinary case.") (internal quotation marks omitted).  "The petitioner's burden in making a gateway showing of actual innocence is deliberately demanding."  *Hyman*, 927 F.3d at 656 (citing cases).

Petitioner makes no assertion that he is actually innocent of his crimes of conviction.  Indeed, the present petition does not have any relationship to the validity of his state criminal convictions or judgments.  Furthermore, petitioner does not challenge the merits of his disciplinary dispositions or Article 10 hearing.  Instead, he argues that because of the timing of when each of those was procedurally resolved, he should no longer be in custody.  Thus, the equitable exception of actual innocence is inapplicable to the instant action.

## V.    CONCLUSION

**WHEREFORE**, it is

**ORDERED** that the petition, Dkt. No. 1, be **DENIED and DISMISSED** in its entirety**;** and it is further

**ORDERED** that no Certificate of Appealability ("COA") shall issue because petitioner has failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[12] and it is further

**ORDERED** that any further request for a Certificate of Appealability must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision upon the parties in accordance with the Local Rules.

Dated: July 24, 2024
        Syracuse, New York

Glenn T. Suddaby
U.S. District Judge

---

[12]  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).